# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JOHN JOSEPH W.,[1]

                   Plaintiff,

     v.

ANDREW M. SAUL,
Commissioner of Social Security,

                   Defendant.

Case No. 2:18-cv-06439-AFM

**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER**

      Plaintiff filed this action seeking review of the Commissioner's final decision denying his application for supplemental security income. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

      On August 11, 2015, Plaintiff applied for supplemental security income, alleging disability since January 2007. Plaintiff's application was denied. (Administrative Record ["AR"] 120-129.) A hearing took place on June 8, 2017

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 81-119.)

In a decision dated June 28, 2017, the ALJ found that Plaintiff suffered from the following severe impairments: osteoarthritis of the right knee; degenerative disc disease of the lumbar spine; heel spurs; obesity; and shoulder impingement. (AR 17.) The ALJ concluded that Plaintiff's impairments did not meet or equal any listed impairment. Further, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following restrictions: occasional climbing of ramps and stairs; occasional balancing, stooping, crouching, and crawling; occasional overhead reaching; no climbing ladders, ropes or scaffolds; and no kneeling. The ALJ also found that Plaintiff required a cane for ambulation. (AR 17.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy. (AR 21.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 21.)

The Appeals Council subsequently denied Plaintiff's request for review (AR 1-9), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

1. Whether the ALJ erred in finding Plaintiff's impairments did not meet or equal Listing 1.02.

2. Whether the ALJ properly evaluated the opinions of Plaintiff's treating physician, Fernando Gonzales, M.D. and treating nurse practitioner Deborah Briones.

3. Whether the ALJ properly rejected Plaintiff's subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial

evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

## I. Relevant Medical Evidence

Montes Medical Group

Plaintiff was treated at Montes Medical Group from October 2014 to January 2015. (AR 367-403.) At his initial appointment, Plaintiff was diagnosed with pain in shoulder and knee joints, psoriasis, cervicalgia, and morbid obesity. (AR 380-381.) X-rays taken in October 2014 revealed acromioclavicular separation of the left shoulder compatible with complete tear of the acromioclavicular ligament; multi-level degenerative change of the lower thoracic and lower lumbar spine; and moderate right knee joint osteoarthritis. (AR 374-375, 401-403.) At various times, Plaintiff was diagnosed with lumbago, low back pain, epicondylitis (tennis elbow), morbid obesity, joint pain, and major depressive disorder. He was provided with prescription medication and referred to physical therapy. (*See, e.g.*, AR 370-378.)

Rio Hondo Medical Group

Plaintiff received treatment from the Rio Hondo Medical Group from May 2015 to February 2016. (AR 411-458, 475-533.) In May 2015, Dr. Gonzales diagnosed Plaintiff with morbid obesity; chronic lumbosacral discogenic disease; and bilateral osteoarthritis in his knees, worse on the right. (AR 509-511.) Plaintiff's prescription medications included Ibuprofen, Naproxen, and Hydrocodone-

Acetaminophen, among others. (AR 510.) In June 2015, Plaintiff was referred to a radiologist for his spine, knees, and shoulders. He was also referred for pain management based upon sciatica pain. (AR 512-513.)

Treatment notes from a follow-up in July 2015 revealed reduced truncal range of motion due to back pain, moderate tenderness on palpation over paraspinal muscles, and positive straight leg raise bilaterally. (AR 515-516.) X-rays from July 15, 2015 revealed findings similar to those taken in 2014 – that is, separation of the acromioclavicular joint in the left shoulder; osteoarthritic changes in the right knee; and multilevel degenerative changes of the lumbar spine. (AR 426, 518.)

An MRI of Plaintiff's lumbar spine was conducted in August 2015. It revealed straightening of the lumbar lordosis, minimal retrolisthesis of L5 on S1, endplate marrow changes, 2.5 mm broad-based disc bulge and bilateral facet hypertrophy with mild bilateral foraminal narrowing at levels L3-4, L4-5, and disc desiccation. (AR 537-538.)

Examination in September 2015 revealed left lower leg radiculopathy, but no edema. Plaintiff was referred to a spinal orthopedist or neurosurgeon for evaluation. (AR 522-523.) A November 2015 examination revealed right lower extremity radiculopathy, but no edema. Plaintiff's pain medications were refilled, and he was referred to pain management for evaluation of epidural treatment. (AR 524-525.)

In December 2015, Plaintiff complained of right heel pain and was referred to a radiologist for possible heel spur. He was also referred to an orthopedic surgeon due to signs of arthritis on both knees. (AR 526-527.)

After an examination in January 2016, the following treatment note was made:

Referral for DME: #1) walker to assist in ambulation due to chronic low back pain and chronic right knee pain; #2) lumbosacral orthotic due to multilevel disc disease and facet arthropathy of the lumbosacral spine.

(AR 530.) Plaintiff received a referral to Life Medical Home Care Devices for a heavy duty walker. The note states that Plaintiff "will be needing a Heavy duty

Walker DX Multi Level Disc Disease and knee pain." (AR 484.) Trazodone was added to Plaintiff's prescription medications. (AR 530.)

Plaintiff's last office visit to Rio Hondo Medical Group was in February 2016. Treatment notes reflect diagnoses of multilevel degenerative disc disease of the lumbosacral spine, retrolisthesis of L5 on S1; major depressive disorder, mild; generalized anxiety disorder; obesity; hyperlipidemia; chronic low back pain; and impaired glucose tolerance. Plaintiff's medications were refilled, and he was advised to follow a calorie-controlled diet. (AR 532-533.)

Dr. Gonzales completed a Physical Residual Functional Capacity Questionnaire[2] in which he indicated that he saw Plaintiff monthly. He diagnosed Plaintiff with multilevel degenerative disc disease, bulging disc, chronic low back pain with radiculopathy radiating to lower extremities, osteoarthritis of his right knee, and right knee pain. (AR 554.) In Dr. Gonzales's opinion, Plaintiff was able to sit continuously for 2 hours for a total of 2 hours in an eight-hour workday; stand continuously for 15 minutes; and stand/walk for a total of less than 2 hours in an eight-hour workday. In addition, he opined that Plaintiff would need unscheduled breaks every hour; needed to use a walker or cane to engage in occasional standing/walking; and was able to occasionally lift and carry less than 10 pounds, but never carry more. As for the clinical findings and objective signs supporting his opinion, Dr. Gonzales identified the August 2015 MRI showing "minimal retrolisthesis," degenerative changes, and disc bulge. (AR 555-556.)

Nurse practitioner Deborah S. Briones, who also treated Plaintiff at Rio Hondo Medical Group, completed Physical Residual Functional Capacity Questionnaire. Her opinions were essentially the same as those of Dr. Gonzales. In addition to identifying the August 2015 MRI of Plaintiff's back as support for her opinion, nurse

---

[2] As Plaintiff concedes, and as discussed further below, the date on which the questionnaire was completed is not clear from the record. (*See* ECF No. 21 at 9.)

practitioner Briones identified the July 2015 x-ray showing osteoarthritis of the right knee. (AR 545-547.)

<u>Consultative orthopedic examination</u>

H. Harlan Bleeker, M.D., conducted an orthopedic examination of Plaintiff on October 22, 2015. Clinical findings included positive straight-leg raising, limited range of motion of both the cervical and lumbar spine, and an acromioclavicular separation of the left shoulder. Dr. Bleeker's report indicates that Plaintiff provided him with an MRI showing arthritis of the right knee and an MRI showing degenerative disc disease at L4-5 and L5-S1. (AR 462-464.) He diagnosed Plaintiff with psoriatic polyarthritis, third degree acromioclavicular separation of the left shoulder, degenerative disc disease, and degenerative arthritis of the cervical spine. (AR 465.) In Dr. Bleeker's opinion, Plaintiff requires the use of a cane to ambulate both short and long distances. Further, Plaintiff cannot kneel, squat or climb; can lift 20 pounds occasionally and 10 pounds frequently; can only occasionally reach overhead with either upper extremity; can sit 6-8 hours; and can stand and/or walk up to 2 hours. (AR 465.)

<u>Consultative psychiatric examination</u>

Gul Ebrahim, M.D., performed a psychiatric examination in October 2015. Plaintiff reported feelings of depression and anxiety. Dr. Ebrahim noted that Plaintiff's gait was normal. Plaintiff's affect was anxious, but otherwise his mental status examination was normal – for example, he maintained eye contact, his speech was normal, he was alert and oriented in all spheres, and his mood was relaxed. Plaintiff's thought processes were linear and goal directed. He was able to recall 3 of 3 items immediately and 2 items after five minutes. His insight and judgment were intact. His fund of knowledge and abstract thinking were adequate. He was able to do serial seven with some pause and use of his fingers. (AR 470-473.)

Dr. Ebrahim diagnosed Plaintiff with "mood disorder due to general medical condition." In Dr. Ebrahim's opinion, Plaintiff had no limitations on his ability to

relate and interact with co-workers, colleagues, and supervisors; and no limitation on his ability to understand and carry out simple instructions. He opined that Plaintiff's ability to maintain focus and concentration required to do work related activities, ability understand and carry out complex or detailed instructions, and ability to cope with work places stress were mildly limited. (AR 473-474.)

<u>Other treatment records</u>

Plaintiff suffered an injury to his right knee in the summer or fall of 2016. (AR 93.) An October 18, 2016 MRI revealed a complete ACL tear, likely chronic given no significant joint effusion; tear of the posterior horn of the lateral meniscus and subtle tear of the anterior horn of the lateral meniscus; small joint effusion; and mild to moderate lateral and mild medial joint space narrowing. (AR 535-536.)

A note from Long Beach Advanced Orthopaedics Medical Center indicates that Plaintiff received treatment on June 7, 2017 for his right knee. The remarks indicate that Plaintiff has "right knee arthritis with ACL tear and lateral meniscus tear and needs surgery." (AR 557.)

April 2017 imaging of Plaintiff's heals revealed bilateral calcaneal bone spurs. (AR 548.)

**II.    Whether the ALJ properly discounted the opinions of Dr. Gonzales and nurse practitioner Briones**

**a.  The ALJ's decision**

In assessing Plaintiff's RFC, the ALJ discussed the foregoing medical evidence and opinions. (AR 18-20.) The ALJ assigned significant weight to the opinion of Dr. Bleeker. As to the opinion of Dr. Gonzales, the ALJ stated the following:

> Less weight was given to the Medical Source Statement completed by someone at Rio Honda [sic] Medical Group. It appears this assessment was left incomplete as there is no signature page and no verification as to who completed this assessment. However, they found

the claimant to be limited to "less than sedentary" work such that the claimant would be limited to standing/walking for less than 2 hours and sitting for about 2 hours in an 8-hour day. They noted the claimant requires a cane or walker and that he would have to take an unexpected break every hour for 4-10 minutes. The undersigned finds these limitations to be excessive given that the claimant's MRI findings merely showed "minimal retrolisthesis" and some degenerative changes. Moreover, it is unclear whether this assessment was completed by an accepted medical source under the Social Security guidelines. Further, they have not provided sufficient justification for their extreme limitations.

(AR 19, citing AR 554-556.)

The ALJ also gave nurse practitioner Briones's opinion little weight. He noted that she was not an accepted medical source and explained that her opinion lacked justification for the same reason that Dr. Gonzales's opinion lacked justification – namely, the absence of objective clinical evidence to support it. (AR 19-20.)

**b. Analysis**

Where, as here, "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). If a treating physician's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Hill v. Astrue*, 698 F.3d 1153, 1159-1160 (9th Cir. 2012); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Although treating physician opinions are entitled to special consideration, an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r*

*of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation and alteration omitted).

Here, Dr. Gonzales's opinion was, in part, controverted by the opinion of Dr. Bleeker. Accordingly, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting it. *Orn*, 495 F.3d at 632. As set forth above, the ALJ provided two reasons for rejecting Dr. Gonzales's opinion. First, the ALJ stated that it was not clear that the opinion was from an accepted medical source under the Social Security guidelines. This conclusion was based upon the ALJ's finding that there was "no signature page and no verification as to who completed this assessment." (AR 19.) Contrary to the ALJ's statement, however, Dr. Gonzales's signature is found on the last page of the Functional Capacity Questionnaire. (AR 556.) Thus, the ALJ's statement is not supported by substantial evidence, and the lack of verification is not a proper reason for rejecting Dr. Gonzales's opinion.[3]

Nevertheless, the ALJ also analyzed the questionnaire as if it had been prepared by a treating physician and provided a reason for discounting it. Specifically, the ALJ found that the limitations were excessive because they were not supported by clinical findings. The ALJ observed that Dr. Gonzales's opinion about Plaintiff's limitations was based upon Plaintiff's MRI results, but those results "merely showed minimal retrolisthesis and some degenerative changes." (AR 19, citing AR 554.)

An ALJ may properly reject a treating physician's opinion that is conclusory or unsupported by clinical findings. *See Chaudhry,* 688 F.3d at 671; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, the ALJ

---

[3] Further, to the extent that ALJ was concerned about the identity of the source of the opinion, he should have contacted the medical source to determine if the necessary information was readily available. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.") (citation omitted).

pointed out the absence of significant clinical findings supporting Dr. Gonzales's opinion. As the ALJ noted, the MRI findings showed minimal retrolisthesis of L5 on S1, a disc bulge with mild bilateral foraminal narrowing, and disc desiccation. (AR 537-538.) Further, the ALJ pointed out that Dr. Bleeker examined Plaintiff and reviewed the MRI and concluded that Plaintiff was able to sit for 6 to 8 hours and stand/walk for two hours in an eight-hour workday. (AR 19; *see* AR 464-465.) Accordingly, the ALJ could properly rely on a lack of objective clinical support in rejecting Dr. Gonzales's opinion. *See Charles B. v. Berryhill*, 2019 WL 1014781, at *6 (C.D. Cal. Mar. 4, 2019) (ALJ properly rejected treating physician opinion for lack of objective support where MRI showed small disc bulges, mild to moderate foraminal stenosis, but no central canal stenosis or root impingement); *Gonzalez v. Astrue*, 2013 WL 394415, at *7-8 (E.D. Cal. Jan. 30, 2013) (ALJ properly rejected treating physician opinion for lack of objective support where MRI and CT scans revealed "mild stenosis"); *Coelho v. Astrue*, 2011 WL 3501734, at *6 (N.D. Cal. Aug. 10, 2011) (ALJ met his burden of providing a specific, legitimate reason to reject the treating physicians' opinions for lack of supporting objective evidence where evidence of cervical spine condition included an MRI showing stenosis, disc narrowing, desiccation, and posterior disc bulging, but normal cord signal), *aff'd*, *Coelho v. Colvin*, 525 F. App'x 637 (9th Cir. 2013).

Plaintiff contends that in weighing Dr. Gonzales's opinion, the ALJ failed to discuss the October 2016 MRI showing an ACL tear and a meniscus tear in his right knee. (ECF No. 21 at 9-10.) Dr. Gonzales, however, did not purport to base his opinion regarding Plaintiff's extreme limitations on the October 2016 MRI findings. In fact, it appears that Dr. Gonzales's opinion was rendered in January 2016, months before Plaintiff's injury to his right knee occurred and before the MRI findings. (*See* AR 530 (treatment note dated January 21, 2016, stating: "Physical residual functional capacity questionnaire will be completed and signed and patient can pick up tomorrow."); ECF No. 21 at 9 ("it appears that at the time Dr. Gonzales completed

the assessment he did not have the updated MRI of the knees available").)[4] Thus, Dr. Gonzales could not have based his opinion on either that MRI or the injuries Plaintiff suffered after slipping and falling at Bob's Big Boy.

Plaintiff argues that "[t]he day that a patient undergoes an MRI is not always the day that the impairment first existed." (ECF No. 21 at 9). Although not entirely clear, Plaintiff essentially argues that Dr. Gonzales could have based his opinion on the tears to Plaintiff's ACL and meniscus even without the MRI results. Whether or not this might be true in some cases, here, there are several problems with Plaintiff's argument. First, Plaintiff testified that his knee injury was the result of a slip and fall that occurred in summer or fall of 2016 (AR 13), and therefore, this particular knee impairment did not exist at the time Dr. Gonzales rendered his opinion. Second, nothing in the record suggests that Dr. Gonzales suspected the existence of, or diagnosed Plaintiff with, torn ligaments in his right knee. Perhaps most importantly, even if Dr. Gonzales suspected that Plaintiff suffered from a tear of his ACL or meniscus, it remains true that his opinion fails to identify any clinical evidence supporting such a diagnosis. In sum, the ALJ did not err in concluding that Dr. Gonzales's opinion lacked objective evidence to support it.

The ALJ also did not err in discounting the limitations opined by nurse practitioner Briones. Because nurse practitioner Briones is considered an "other source," her opinion was not entitled to the same deference as the opinion of a licensed physician. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing 20 C.F.R. §§ 404.1513(d), 404.1527 & SSR 06–03p). An ALJ may discount testimony from "other sources" so long as the ALJ "gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d

---

[4] The Court notes that the Court Transcript Index designates Dr. Gonzales's questionnaire (Exhibit C12F) as "Physical RFC Assessment, dated 05/31/2017, from Rio Hondo Medical Group" and Briones's questionnaire (Exhibit C9F) as "dated 02/06/2017." (ECF No. 17-2 at 3.) These dates, however, are not based upon a date provided by the sources, but appear to be based upon the date the questionnaires were stamped "received" by Plaintiff's attorneys.

1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). The ALJ's reason that nurse practitioner Briones's opinion was unsupported by medical evidence fulfilled this requirement. *See Wilfred-Pickett v. Berryhill*, 719 F. App'x 576, 579 (9th Cir. 2017); *Chaudhry*, 688 F.3d at 671.

Finally, as the Commissioner correctly points out, Dr. Bleeker's opinion, which was rendered after personally examining Plaintiff, constitutes substantial evidence supporting the ALJ's RFC assessment. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

III.   **Whether the ALJ provided legally sufficient reasons supporting his credibility determination**

a. **Plaintiff's subjective complaints**

Plaintiff completed a pain questionnaire in which he stated that his pain began in 1993 and had gradually become worse. The pain occurs all the time and is brought on by "living, breathing, 24-hours a day." Plaintiff takes Vicodin for the pain. He takes one at night to sleep and during the day he tries to take just half of a pill. It relieves the pain "some." (AR 255.) He indicated that his medication did not cause side effects. (AR 256.)

At the hearing, Plaintiff testified that he suffered from memory problems and was "real hazy with dates." (AR 88.) According to Plaintiff, his memory problems were caused by concussions he sustained as a result of "everything from high school football to doing professional rodeo when I was a kid." Plaintiff said that he had complained to his doctor about his memory problem but was told there was nothing they could do about it. He had never had any scan or MRI bases upon his memory trouble. (AR 88-89.)

With respect to his back impairment, Plaintiff testified that he wears a back brace and takes pain medication. Because of Plaintiff's back impairment, he was unable to walk, sit, or drive for long.  (AR 90-92.)

With regard to his knee, Plaintiff testified that it had been injured since high school football and had gotten worse over time. Plaintiff explained that he suffered a "slip and fall" in summer or fall of 2016, and he believed that was when he tore his ACL. (AR 93.) In response to the ALJ's inquiry about how the injury occurred, Plaintiff explained that he was at a Bob's Big Boy restaurant with a friend and when they were leaving, Plaintiff went to the restroom. Plaintiff was walking to the sink when his right leg slipped. He tried to catch himself by getting to the wall, but his leg became pinned behind him. As it turned out, there was a sprinkler leaking from the roof. (AR 93.) Plaintiff was able to remember where he parked even though the incident happened approximately a year earlier. (AR 110.) He explained that his memory was "not too bad with like a year ago or so," but his memory faltered "further than that." (AR 110.)

At the time of the incident, Plaintiff was walking without his walker. Plaintiff did not have his cane with him either. (AR 93.) According to Plaintiff, he did not yet own his walker at the time of the accident. (AR 95.)

Plaintiff explained that he used a cane "here and there, mostly for my back." (AR 95.) Plaintiff said that he can walk with nothing at all "just within my room." But to move through the house, he uses a cane. He then added that sometimes "I'll try to do it with a cane, but mostly I'll do it with the walker." (AR 96.)

Regarding his daily activities, Plaintiff testified that he is able to drive. He drives his mother to go shopping, and he would "maybe go inside a little bit and come back and sit in the truck." (AR 98; *see also* AR 256-257.) Plaintiff reads history books and spends a couple of hours a night reading. (AR 98, 101.) Plaintiff walks up and down his "long driveway" for exercise. He goes outside to watch the animals, sitting and walking. He spends time in the garage working on a model train. (AR 101.) Plaintiff uses the computer, researching "stuff," reading things, watching YouTube videos about history. (AR 108.) Plaintiff feeds some of his animals, which entailed throwing chicken scratch or opening a can of cat food. (AR 108.)

Plaintiff estimated that he can stand for about a half hour at a time and is able to sit for about the same length of time. (AR 100, 257.) However, doing so would cause him significant pain and stiffness. (AR 104.) Plaintiff tries to take his pain medication (Vicodin) only before bed. He explained that he is in pain all day. He does not take the pain medication during the day because "it doesn't help. It's more of like a glorified sleep aid." (AR 104-105.)

### b. Relevant law

Where, as here, a claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, an ALJ can reject the claimant's testimony about the severity of symptoms "only by offering specific, clear and convincing reasons for doing so." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-1015 (9th Cir. 2014)). The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991) (en banc)).

Factors an ALJ may consider when making such a determination include ordinary techniques of credibility evaluation, including internal contradictions in the claimant's statements and testimony as well as conflicts between the claimant's testimony and the claimant's conduct – such as daily activities, work record, or an unexplained failure to pursue or follow treatment. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Molina*, 674 F.3d at 1112. In addition, although an ALJ may not disregard a claimant's testimony solely because it is not substantiated by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in making a credibility assessment. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

Assessment of credibility is a function left solely to the Commissioner. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Thus, so long as the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, the Court may not substitute its own judgment. *See Ghanim*, 763 F.3d at 1163.

### c. Analysis

The ALJ provided the following reasons for discounting Plaintiff's subjective complaints: (1) it was inconsistent with the medical evidence; (2) it was inconsistent with other evidence in the record; and (3) it was inconsistent with Plaintiff's daily activities. (AR 20.)

Inconsistent with the medical evidence

As set forth in detail above, the ALJ discussed the medical evidence in the record, including the diagnostic tests and clinical observations by Plaintiff's treating sources and the consultative examining physicians. With regard to Plaintiff's physical impairments, the ALJ noted that diagnostic results showing joint space narrowing and osteoarthritis in the right knee, degenerative disc disease of the spine with some disc bulges, and acromioclavicular joint separation of the left shoulder. (AR 18-19.) Based upon this evidence, the ALJ concluded that Plaintiff's physical impairments imposed significant restrictions on his functional abilities, thereby limiting him to a restricted range of sedentary exertional work. At the same time, the ALJ pointed to the absence, or minimal nature, of objective findings supporting Plaintiff's allegations of extreme disabling pain and limitations. For example, the ALJ pointed to evidence that Plaintiff retained normal motor strength, the absence of radicular pain, no significant loss of movement or function, normal reflexes and sensation in the upper extremities, and the absence of objective evidence indicating that Plaintiff's obesity resulted in additional functional limitations. The ALJ could properly consider this lack of objective evidence in assessing the credibility of Plaintiff's allegations of disabling pain. *See* SSR 16-3p ("The intensity, persistence,

and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence. Examples such as reduced joint motion, muscle spasm, sensory deficit, and motor disruption illustrate findings that may result from, or be associated with, the symptom of pain.").

Regarding Plaintiff's alleged mental impairments of memory loss and anxiety, the ALJ pointed to Dr. Ebrahim's psychiatric examination results, which were essentially unremarkable, as well as Dr. Ebrahim's opinion that Plaintiff suffered no limitations, or at most mild limitations, in mental functioning. (AR 16.)

Plaintiff notes that the ALJ failed to consider the MRI showing tears to his ACL and meniscus. (ECF No. 21 at 9.) While true, the MRI does not undermine the ALJ's conclusion. That is, in consideration of Plaintiff's impairments as well as subjective complaints, the ALJ restricted him to performing a limited range of sedentary work. No physician opined that Plaintiff's 2016 knee injury resulted in functional limitations greater than those the ALJ assessed, or that those limitations were expected to persist for longer than 12 months.[5]

In sum, the ALJ's summary of the evidence was accurate. So long as it was not the sole basis for his credibility determination, the ALJ was entitled to rely upon the lack of objective medical evidence to discredit Plaintiff's subjective complaints. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) (conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility).

---

[5] As mentioned above, the record indicates that surgery was contemplated to repair the tears.

<u>Inconsistent with other evidence</u>

The ALJ observed that, contrary to Plaintiff's allegation of memory problems, he demonstrated excellent recall of events during his testimony and was able to remember the details of where he parked over a year earlier. (AR 20.) The ALJ could properly rely, in part, upon observations that Plaintiff's conduct at the hearing was inconsistent with alleged impaired memory. This was not an improper consideration. *See Orn*, 495 F.3d at 639-640 (while an ALJ may not rely solely on personal observations to discount a claimant's testimony, the ALJ may use those observations in context with other indicators of the claimant's credibility in evaluating testimony); *Lindsay v. Berryhill*, 2018 WL 3487167, at *4 (C.D. Cal. July 18, 2018) (ALJ properly relied upon observations that claimant's conduct at the hearing was inconsistent with alleged impaired concentration or social function); *Estrada v. Colvin*, 2016 WL 1181505, at *10 (E.D. Cal. Mar. 28, 2016) (ALJ was entitled to consider observations that claimant was able to participate in the hearing without distraction, which contradicted hearing testimony regarding maintaining concentration).

In addition, the ALJ noted that contrary to Plaintiff's claim that he required a walker to ambulate, the record demonstrated occasions when Plaintiff did not use a walker or a cane. (AR 20.) In fact, as noted above, Plaintiff used neither a walker nor a cane in the summer or fall of 2016 when he went to Bob's Big Boy. The ALJ could properly rely on such inconsistencies in assessing Plaintiff's credibility. *See, e.g., Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999) (claimant's testimony properly discounted when the claimant used a cane, but "two doctors had specifically noted that the [claimant] did not need such a device"); *Savage v. Berryhill*, 2017 WL 3981410, at *5 (E.D. Cal. Sept. 11, 2017) (ALJ properly considered inconsistency between claimant's allegation that she required a cane but that she only used the cane "off and on"); *see also Molina*, 674 F.3d at 1112 ("the ALJ may consider

inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct").

Daily activities

The ALJ noted that Plaintiff's daily activities include "sitting around" watching TV, going for short walks, feeding his chickens, taking his mother shopping, and reading books, sometimes for two hours. He found these activities inconsistent with Plaintiff's allegations of disabling pain and symptoms. (AR 20.)

The functional abilities necessary to perform Plaintiff's admitted daily activities are inconsistent with some of Plaintiff's allegations of disabling limitations. *See Turner*, 613 F.3d at 1225 (even where daily activities suggest some difficulty functioning, they are still grounds for discrediting claimant's testimony where they contradict allegations of totally debilitating impairment); *Burch*, 400 F.3d at 681 (activities such as caring for personal needs, cooking, cleaning and shopping were reasonable basis to discount claimant's credibility). Although the evidence of Plaintiff's daily activities could also be interpreted more favorable to Plaintiff, the ALJ's interpretation was rational, and the Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 681 (quoting *Magallanes*, 881 F.2d at 750); *see generally Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").

Moreover, even if Plaintiff's daily activities were not a clear and convincing reason for rejecting his subjective complaints, any error would be harmless in light of the other legally sufficient reasons for the ALJ's determination. *See Molina*, 674 F.3d at 1115 (where one or more reasons supporting ALJ's credibility analysis are invalid, error is harmless if ALJ provided other valid reasons supported by the record); *Batson*, 359 F.3d at 1197 (even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless where ALJ provided other valid bases for credibility determination).

**IV.    Whether the ALJ erred in determining that Plaintiff's impairments did not meet or equal Listing 1.02**

Plaintiff contends that the ALJ erred in finding that his impairments did not meet or equal section 1.02A of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1. (ECF No. 21 at 4-7.) Plaintiff bears the burden of showing that he has an impairment that meets or equals the criteria of a listed impairment. *Burch*, 400 F.3d at 683. To "meet" a listed impairment, a claimant must establish that his condition satisfies each element of the listed impairment in question. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to all of the criteria for the most similar listed impairment. *Tackett*, 180 F.3d at 1099-1100 (quoting 20 C.F.R. 404.1526); *see Sullivan*, 493 U.S. at 531.

To be considered presumptively disabled under Listing 1.02A, a claimant must demonstrate that (1) he has major dysfunction of a major peripheral weight-bearing joint (i.e., hip, knee, or ankle) characterized by gross anatomical deformity and chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joint; (2) medical imaging reflects narrowing, destruction, or ankylosis of the affected joint; and (3) the dysfunction results in an "inability to ambulate effectively, as defined in [Listing 1.00(B)(2)(b)(2)]." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02, 1.02A. Listing 1.00B2b defines "inability to ambulate effectively" as an "extreme limitation of the ability to walk," and provides a non-exhaustive list of examples, including "the inability to walk without the use of a walker, two crutches or two canes," "the inability to walk a block at a reasonable pace on rough or uneven surfaces," and "the inability to carry out routine ambulatory activities, such as shopping and banking." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02A, 1.00B2b.

The ALJ determined that there was insufficient evidence that Plaintiff's impairments met or equaled Listing 1.02. As the ALJ explained:

> Specifically, while there is mention of the use of a walker, claimant does not medically need the walker. Rather, he testified he can ambulate short distances in his home without a walker. In addition, he testified he usually uses a cane inside home as a walker is too bulky. In fact, he stated that he only used a walker after his knee injury in October 2016. He was ambulating without a cane prior to that date.

(AR 17.)

Plaintiff contends that the ALJ's determination is not supported by substantial evidence because it is based upon a misstatement of Plaintiff's testimony regarding whether he used the walker inside his house. Alternatively, Plaintiff contends that even if he did not use the walker inside his house, he still meets the listing because he satisfies the definition of being unable to ambulate effectively. (ECF No. 21 at 5-6.) Plaintiff's contentions lack merit.

As set forth above, the record lacks medical evidence demonstrating that Plaintiff's impairments result in the extreme limitation on walking required by Listing 1.02A. Even Dr. Gonzales, who prescribed the walker to assist with ambulation, did not opine that Plaintiff was unable to ambulate without a walker. Instead, he stated Plaintiff needed a cane or walker. (AR 556.)

The crux of Plaintiff's argument is that the ALJ should have believed his self-reports that he is incapable of walking without a walker. But neither Plaintiff's self-reported limitations nor his intermittent use of a walker after his knee injury in 2016 constitutes objective medical evidence of an inability to ambulate effectively. *See Graham v. Colvin*, 2014 WL 1328521, at *6 (W.D. Wash. Mar. 31, 2014) (no error in finding claimant did not meet Listing 1.04 where there was no objective evidence of inability to ambulate effectively); *Veniale v. Colvin*, 2014 WL 1246135, at *2 (C.D. Cal. Mar. 24, 2014) (affirming ALJ's finding that claimant was not disabled

under Listing 1.02A where the ALJ found there was no medical evidence "to establish that [claimant's] knee osteoarthritis was sufficiently serious to require the use of a wheelchair or any other assistive device"); *Perez v. Astrue*, 831 F. Supp. 2d 1168, 1176 (C.D. Cal. 2011) (claimant failed to show she was unable to ambulate effectively where no physician provided an RFC assessment precluding walking, and where physician concluded claimant could walk four hours in an eight-hour day); *Hamilton v. Astrue*, 2010 WL 3748744, at *7 (C.D. Cal. Sept. 22, 2010) ("Plaintiff's self-reports of symptoms and functional limitations based on hip and joint pain cannot suffice to raise the severity of her related impairment to that of Listing 1.02A.").

Finally, substantial evidence supports the ALJ's determination that Plaintiff was able to ambulate effectively. The record shows, and Plaintiff testified, that he continued to walk with a cane *after* he was prescribed a walker in January 2016 and even after his October 2016 knee injury. (*See* AR 39 (Plaintiff's testimony), 74 (treatment note from June 2017, stating that Plaintiff "ambulates with a single-point cane. Prior to this fall, he did not need any assistive devices."), 532 (treatment note from February 2016, stating that Plaintiff "using cane to ambulate").)

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 8/14/2019

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE